IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RICHARD STAMEY and VALERIE STAMEY, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL HOWELL, VICTORIA HOWELL, and BITTERROOT STAR INC., <br><br> Defendants. | CV 16–23–M–DLC <br><br> ORDER |

Before the Court is Defendants Michael Howell, Victoria Howell, and Bitterroot Star, Inc.'s (collectively "Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Richard Stamey and Valerie Stamey (the "Stameys") oppose the motion. For the reasons explained below, the Court will deny Defendants' motion.

However, before the Court discusses the motion on its merits, it must first address two preliminary matters. First, there is a dispute amongst the parties as to the documents the Court may consider in issuing its decision. Generally, courts may only consider the allegations in the complaint when ruling on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

-1-

However, if a complaint specifically refers to a document whose authenticity is not questioned by the parties, a court may consider the document when ruling on the motion. *Branch*,14 F.3d at 454.

Here, Defendants have attached two documents to their motion to dismiss: (1) a February 12, 2014, newspaper article published by Defendant Bitterroot Star Inc. (Doc. 4-1); and (2) a February 5, 2014, decision by Montana's Commissioner of Political Practices (Doc. 4-2). Both of these documents are referred to in the Stamey's Second Amended Complaint (Doc. 13-1 at 5, 7) and Defendants urge the Court to consider them in ruling on the underlying motion. The Stameys do not object to the Court considering the newspaper article but do object to the 2014 decision. The Stameys assert that the February 2014 decision is not relevant to the Court's decision. However, because the Stameys do not question the authenticity of these documents, the Court will consider them. Further, as discussed below, this decision is central to the Court's analysis.

Additionally, after Defendants moved to dismiss the original Complaint (Doc. 3), the Stameys filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) (Doc. 5). In response and out of an abundance of caution, Defendants filed a Second Motion to Dismiss (Doc. 6) in order to avoid any procedural disputes. However, Defendants contend that the Second Motion to

Dismiss is not necessary, and the Court could still rule on the original motion to dismiss, because the Amended Complaint failed to cure the alleged defects in the first Complaint. Before the Court could address this issue, the Stameys moved for leave to file a Second Amended Complaint under Federal Rule of Civil Procedure 15(a)(2). Defendants do not oppose this motion but renew their argument that the Court can still rule on the First Motion to Dismiss because the proposed Second Amended Complaint did not cure the defects previously raised.

Because leave to file an amended complaint should be given freely, and because Defendants do not oppose this motion, the Court will grant the motion and permit the Stameys to file their Second Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2) (stating that a "court should freely give leave when justice so requires"). Further, the Court agrees with Defendants that their original motion to dismiss is unaffected by the filing of the subsequent complaints and will rule on the first motion filed. Charles Alan Wright et al., *Federal Practice and Procedure* vol. 6, § 1476, 638 (3d., West 2005) (stating that defendants are not required to file a new motion to dismiss following an amended pleading if the "defects raised in the original motion remain . . . . To hold otherwise would be to exalt form over substance."). Accordingly, the Court will deny Defendants' Second Motion to Dismiss as moot.

# BACKGROUND[1]

In February 2010, Plaintiff Richard Stamey ("Richard") ran for Montana House District 89 and filed as a Republican candidate. Plaintiff Valerie Stamey ("Valerie"), Richard's wife, was listed as his campaign treasurer. Just prior to the June 2010 Republican primary, Valerie contacted Defendant Bitterroot Star Inc. ("Bitterroot Star"), a weekly newspaper in Stevensville, Montana, and requested publication of multiple advertisements highlighting Richard's campaign. The first advertisement was published on June 2, 2010. Following this publication, there is considerable dispute as to what transpired next.

The Stameys maintain that the advertisement was defective and contacted Victoria Howell ("Victoria"), the co-owner of the newspaper, on June 3, 2010, to complain. It appears nothing was resolved following this initial complaint. However, the Stameys state that Valerie contacted Victoria again in late June 2010 to discuss the advertisement. According to the Stameys, Victoria offered to credit Valerie $162.75, the outstanding cost of the advertisement, against the balance

---

[1] This section is derived from: (1) the Stameys' Second Amended Complaint (Doc. 13-1); (2) the February 12, 2014, newspaper article (Doc. 4-1); (3) the February 5, 2014, decision by the Commissioner of Political Practices (Doc. 4-2); and (4) Defendants' January 22, 2014, complaint to the Commissioner of Political Practices (Doc. 9-1). Defendants complaint was referred to in the Stameys' Second Amended Complaint (Doc. 13-1 at 5) and attached to their response in opposition to the motion to dismiss. The Court will consider this document when ruling on the instant motion. *Branch*, 14 F.3d at 454.

remaining on the Bitterroot Star's books. However, Defendants contend that this debt was never forgiven and the Bitterroot Star continued to send a monthly billing statement to the Stameys through 2011.

Despite this contention, on September 29, 2011, the Stameys listed this "forgiven debt" as an in-kind donation to Richard's political campaign on a campaign finance report filed with Montana's Commissioner of Political Practices (the "Commissioner"). This report, known as a "closing report," was in response to an earlier decision issued by the Commissioner (*Maclaren v. Stamey*, COPP-2011-CFP-12) which found that a previous campaign finance report filed by Richard's campaign failed to account for $162.00 in expenditures. In an attempt to resolve this discrepancy, the Stameys filed the closing report which stated that the Bitterroot Star gave Richard's campaign a $125.00 in-kind credit on September 1, 2011.[2] The closing report was certified by Richard and signed by Valerie.

On January 22, 2014, Victoria and the Bitterroot Star filed a complaint with the Commissioner accusing the Stameys of filing a false campaign report in

---

[2] In the September decision discussed *infra*, the Commissioner noted that the alleged $125.00 credit did not resolve the full $162.00 that was unaccounted for in the Stameys' previous campaign finance report. However, the Commissioner accepted the closing report as signed and filed by the Stameys. (Doc. 4-2 at 5.)

violation of Montana law. Specifically, the complaint stated that the Bitterroot Star never contributed anything to Richard's campaign and alleged the closing report violated two state laws: (1) Montana Code Annotated ("MCA") § 13–37–231, which requires that all campaign reports be certified as true, complete, and correct; and (2) MCA § 45–7–202, which prohibits false swearing, i.e., knowingly making a false statement to purposely mislead a public servant.

After investigating the matter, the Commissioner issued a decision *(Howell v. Stamey*, COPP-2014-CFP-003) finding that the closing report filed by the Stamey campaign was false. In making this determination, the Commissioner declined to find violations of MCA §§ 13–37–231 and 45–7–202, and, instead, found that the Stameys had violated MCA § 13–35–207(3) ("Deceptive election practices"), which prohibits a person from " knowingly caus[ing] a false statement, certificate, or return of any kind to be signed."[3] The Commissioner found that the Stameys failed to provide any documents or evidence that the Bitterroot Star had forgiven the debt and determined that the Stameys had filed the closing report for the purpose of misleading the Commissioner's staff. The Commissioner concluded with a finding that monetary fines and possible jail time were

---

[3] The Commissioner also concluded that the closing report violated MCA 13–37–230(f) (2013) which requires disclosure of "the amount and nature of debts and obligations owed by a . . . candidate in the form prescribed by the commissioner."

appropriate penalties for filing the false report.

Based upon this decision, on February 12, 2014, the Bitterroot Star published an article entitled: "Stameys filed false campaign finance report." (Doc. 4-1 at 1.) This article was written by Defendant Michael Howell ("Michael"), Victoria's husband and a reporter at the Bitterroot Star. The article discussed the Commissioner's determination that the Stameys had filed a false campaign finance report in violation of Montana law and included this discussion in the second paragraph:

> The violation came to light when Bitterroot Star reporter Michael Howell was investigating the Stameys' political activities in Ravalli County in relation to the recent events in the treasurer's office. It was discovered that the Stameys had falsely claimed an in-kind donation from the Bitterroot Star as part of their closing campaign finance report for the 2010 elections in which Richard Stamey ran against Gary MacLaren in the primary.

(*Id*.) The article went on to summarize the Commissioner's decision and included a discussion about the June 2010 advertisement, the unpaid debt, and Victoria's assertion that the debt was never forgiven. This article, as well as the related complaint to the Commissioner, serve as the basis for the Stameys' litigation in this Court.

In their Second Amended Complaint, the Stameys contend that they were defamed by Defendants and bring four causes of action. First, Count I asserts a

claim of libel against all Defendants and alleges that the Bitterroot Star's article improperly accused the Stameys of filing "a false campaign financial report impliedly accusing them of the crime of false swearing." (Doc. 13-1 at 8.) The Stameys contend that "Count I is based on Mr. Howell's own investigation of campaign finance reports and impliedly of the records of thBitterroot [sic] Star as shown in second paragraph of the article, in the title of the article." (*Id*.) Next, Count II, similar to Count I, asserts a libel claim and states that Defendants "published the findings of the Montana Commissioner of Political Practices with actual knowledge that those findings were false and that they falsely accused Richard and Valerie Stamey of the crime of false swearing." (*Id.* at 8–9.) Count III (misidentified as Count II) is substantially similar to the previous counts except that it is only brought against Michael and accuses him of maliciously publishing the article with the actual knowledge or reckless disregard for the fact that its contents were based on false accusations accusing the Stameys of the crime of false swearing. Finally, Count IV (misidentified as Count III) is also similar to the previous counts except that it is only brought against the Bitterroot Star and asserts that the newspaper maliciously published the article with the actual knowledge or reckless disregard for the fact that its contents were based on false accusations accusing the Stameys of the crime of false swearing.

**STANDARD**

The Federal Rules of Civil Procedure allow for dismissal when the allegations in the pleading "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 782–783 (9th Cir. 1996). Nonetheless, a court may dismiss a complaint if it lacks a cognizable legal theory. *Id.* at 783. Thus, in order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

**DISCUSSION**

As discussed, the Stameys assert that they were defamed by Defendants' newspaper article. Because this action is based on diversity jurisdiction, the Court applies the substantive law of the state in which it sits. *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007). Under Montana statutory law, defamation can be effected by slander or, as alleged here, by libel. Mont. Code Ann. § 27–1–801. "Libel is a false and unprivileged publication by writing . . . that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned

or avoided or that has a tendency to injure a person in the person's occupation."

Mont. Code Ann. § 27–1–802. Falsely accusing someone of committing a crime can be an considered an actionable claim for defamation. *Jonas v. Lake County Leader*, 953 F. Supp. 2d 1117, 1125 (D. Mont. 2013) (citing *Spreadbury v. Bitterroot Public Library*, 856 F.Supp.2d 1195, 1199 (D. Mont. 2012) ("Under Montana law, defamation per se exists when a private actor falsely accuses an individual of committing a crime.")).

The February 14, 2014 article was titled "Stameys filed false campaign finance report." (Doc. 4-1 at 1.) Further, as discussed above, the second paragraph of the article described how "the Stameys had falsely claimed an in-kind donation from the Bitterroot Star as part of their closing campaign finance report." (*Id*.) As found by the Commissioner, these actions constitute a violation of MCA § 13–35–207(3), and could subject the Stameys to incarceration and fines. As discussed, the Stameys argue that these allegations are false. Taking the allegations in the Second Amended Complaint as true, the Court finds that the newspaper article accuses the Stameys of committing a crime and thus, for purposes of the present motion, supports a claim for defamation.

However, a claim of libel only exists for unprivileged publications. *McLeod v. State ex rel. Dept. of Transp.*, 206 P.3d 956, 960 (Mont. 2009); *see also Skinner*

*v. Pistoria*, 633 P.2d 672, 675 (Mont. 1981) ("One requisite of a defamation action is that the communication must be unprivileged."). "[T]he preliminary determination of whether a publication is privileged is a question of law for the court." *McLeod*, 206 P.3d at 962. However, "this determination may [only] be reached by the court when material facts are not in dispute." *Id*.

Defendants argue that the February 12, 2014, article was privileged under Montana law. Defendants cite MCA § 27–1–804(2) and (4) in support of their argument. This statute states that:

> A privileged publication is one made . . .
> (2) in any legislative or judicial proceeding or in any other official proceeding authorized by law; [or]
> (4) by a fair and true report without malice of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

Mont. Code Ann. § 27–1–804. The Court will address subsection (2) first.

**A. MCA § 27–1–804(2)**

Defendants contend that the Bitterroot Star's article is privileged under subsection (2) because this provision "applies to a statement made in the course of an official proceedings [sic] regardless of how it was communicated." (Doc. 4 at 13.) Defendants cite to *Skinner v. Pistoria*, 633 P.2d 672 (Mont. 1981), in support of their argument. *Skinner*, however, is distinguishable from the case at bar.

There, the Montana Supreme Court found that slanderous statements made at a Great Falls City Commission meeting were privileged under MCA § 27–1–804(2). *Skinner*, 633 P.2d at 676. The focus of the Court's holding was the meaning of "publication" and whether Skinner's statements to the Great Falls City Commission were subsequently "cloaked with absolute immunity." *Id.* at 674. The Court found that they were and stated that "[w]e draw no distinctions between the reading of the letter to the city commission, its distribution to the press at the meeting, and its later treatment by the media." *Id.* at 675. Defendants now argue that this statement shows that the *Skinner* court interpreted subsection (2) to bestow immunity upon on reports of defamatory statements. Defendants read this statement too broadly.

When read in context, it is clear that the Montana Supreme Court was discussing whether Skinner would lose his "cloak of immunity" under MCA § 27–1–804(2) if his statements were reported by the media, not whether the media reports themselves would be privileged.[4] Here, the plain language of the statute mandates that the privileged publication must be "made in [the] legislative or judicial proceeding." Mont. Code. Ann. § 27–1–804(2). Accordingly,

---

[4] The Court notes that, however, Victoria and the Bitterroot Star's complaint to the Commissioner would be privileged under MCA § 27–1–804(2).

Defendants argument that the newspaper article is privileged under subsection (2) must fail.

   B.  MCA § 27–1–804(4)

However, even if subsection (2) does not apply, Defendants contend that their article is shielded from liability under MCA § 27–1–804(4).  Defendants argue that as long as their article was "a fair and true report" of the Commissioner's decision, i.e., the "public official proceeding," then they are immune from liability under MCA § 27–1–804(4).  The Stameys counter that the privilege afforded by this statute is conditional and can be lost if the report is made with malice.  The Stameys stress the plain language of this statute and argue that the terms "without malice" create a factual question for the jury precluding dismissal.

The Montana Supreme Court has yet to address MCA § 27–1–804(4) in this context.  However, this does not prevent the Court from forecasting how this statute would be interpreted by Montana's high court.  Indeed, "where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), modified at 810 F.2d 1517 (9th Cir.1987).  In making this determination, a court should look to persuasive authorities, including

treatises and decisions from other jurisdictions, for guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

Defendants argue that, contrary to the plain language of the statute, courts dealing with similar issues have abandoned the requirement that a publication reporting on an official proceeding must be made without malice to be privileged. Defendants cite a string of cases in support of this argument, including *Schiavone v. Time, Inc.*, 569 F.Supp. 614, 619 (D.N.J. 1983), *rev'd*, 735 F.2d 94 (3d Cir. 1984).

In *Schiavone*, a federal district court applied New Jersey common law to find that the fair report privilege is not lost even if the report was made with malice. *Schiavone*, 569 F.Supp. at 619. The district came to this conclusion based primarily on its analysis of the *Restatement (Second) of Torts*, which states that the fair report privilege applies even if the report is "made solely for the purpose of causing harm." *Id.* (quoting Reporter's Note, *Restatement (Second) of Torts* § 611 (1977). However, contrary to Defendants' argument, the district court in *Schiavone* was subsequently overruled by the Court of Appeals for the Third Circuit. *Schiavone Const. Co. v. Time, Inc.*, 735 F.2d 94, 97 (3d Cir. 1984). In reversing the district court, the Third Circuit noted past decisions by the New Jersey Supreme Court that found that a showing of malice could defeat the

privilege and could not agree with the federal district court that "if faced with the issue today, the highest court of New Jersey would decide that proof of malice would not defeat the privilege of fair report." *Schiavone Const. Co.*, 735 F.2d at 97.

Additionally, the other cases cited by Defendants in support of their argument are also distinguishable. For one, none of the cases cited by Defendants discuss a court acting contrary to a state's express statutory requirement that the privilege only applies in the absence of malice. Indeed, the cases cited by Defendants all interpret state common law or apply state statues that do not address the issue of malice. *See Nanji v. National Geographic Society*, 403 F.Supp.2d 425 (D. Md. 2005) (interpreting privilege under Maryland common law); *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825 (Ill. 2006) (discussing privilege under Illinois common law); *Daniel Goldreyer, Ltd. v. Van De Wetering*, 217 A.D.2d 434 (N.Y. App. Div. 1st Dept. 1995) (discussing a New York state statute that does not condition privilege on the absence of malice). Thus, Defendants' authority is inapposite to the case at bar.

Further, when interpreting Montana law, "statutory language must be construed according to its plain meaning and, if the language is clear and unambiguous, no further interpretation is required." *Infinity Ins. Co. v. Dodson*,

14 P.3d 487, 496 (Mont. 2000). Here, MCA § 27–1–804(4)'s privilege is clearly conditioned on the absence of malice. Under the present motion, the Court must construe all allegations as true and in the light most favorable to the Stameys. Because the Stameys allege that the newspaper article was published out of malice, a factual dispute remains preventing dismissal at this point.[5] The Court will thus deny Defendants' motion to dismiss.

Accordingly, IT IS ORDERED that:

(1) Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 3) is DENIED.

(2) Plaintiffs' First Motion to Amend/Correct the Complaint (Doc. 5) is DENIED as moot.

(3) Defendants' Second Motion to Dismiss for Failure to State a Claim (Doc. 6) is DENIED as moot.

(4) Plaintiffs' Motion for Leave to Filed Second Amended Complaint (Doc. 13) is GRANTED.

---

[5] In their reply brief, for the first time, Defendants argue that the newspaper article was substantially true and thus dismissal is appropriate because the truth is a complete defense to defamation. (Doc. 10 at 12 (citing *Jonas*, 953 F. Supp. 2d at 1126).) However, because the Court must assume for purpose of the present motion that the article was reporting on a falsehood, the Court finds that this argument must await a motion for summary judgment. *See Citizens First Nat. Bank of Wolf Point v. Moe Motor Co.*, 813 P.2d 400, 404 (Mont. 1991) (affirming district court's order granting summary judgment after finding that the allegedly defamatory statements were true).

Dated this 7th day of December, 2016.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court